GELLER, APPELLEE, *v.* McCORT, TREAS., ET AL., APPELLANTS.

(Decided December 17, 1938.)

*Mr. Earl R. Lewis, Mr. Roy W. Lewis* and *Mr. Edmund L. Matz,* for appellee.

*Mr. Ross Michener,* prosecuting attorney, and *Mr. C. C. Sedgwick,* for appellants.

MONTGOMERY, P. J. The cashier of The Dollar Savings Bank Company of St. Clairsville, Ohio, a duly organized and operating state bank during the dates in question, made a return for the years 1929 and 1930 to the auditor of Belmont county in accordance with

the provisions of Section 5411, General Code, then in force, which return was in duplicate, under oath, and set forth the resources and liabilities of the bank, with a full statement of the names of the stockholders, the number of shares held by each and the par value thereof. The county auditor thereafter assessed and levied a tax on the aggregate value of all of the shares of the bank after making the deductions required by the statute and listed the same in the name of the bank. This assessment was then certified to the county treasurer for collection in the name of the bank, but none of the taxes were paid. The total amount due for taxes for the two years, with penalties, aggregated $4,293.79, and the same, not having been paid, the county auditor certified it to the county recorder, as provided by Section 5694, General Code, and such taxes and penalties were thereby made a lien on the real estate of the bank.

In the meantime, however, on August 21, 1930, the Superintendent of Banks of the state of Ohio took possession of the business and property of said bank for liquidation, and the same has not yet been concluded. On November 20, 1934, the Superintendent of Banks, as authorized by the Court of Common Pleas of Belmont county, sold and conveyed the real estate involved in this action to the plaintiff.

The plaintiff then, on July 28, 1937, filed this action in the Court of Common Pleas asking that the tax be declared illegal and void, the lien be removed from her property, her title be quieted in the real estate, and the treasurer be enjoined from the collection of the taxes. The Superintendent of Banks of the state of Ohio filed an answer and cross-petition in which he admitted all the allegations of the petition. The defendants, the county officers, filed an answer in which they averred that the tax and the lien thereof were legal and valid. After appeal to this court the defendants, the county officers, filed an amended answer and cross-petition in

which they asked that the Superintendent of Banks be required to pay these taxes to the treasurer of Belmont county.

Mention is to be made of the fact that certain demurrers have been filed to some of these defenses contained in the amended answer of the county officers. Taking the view which we do of the whole case, it becomes unnecessary to discuss demurrers, and they may be overruled.

The question for decision is simply this: These taxes having been listed and certified in the name of the bank, instead of in the names of the individual stockholders of the bank, is the tax levy invalid, and is the plaintiff entitled to the relief which she seeks?

Sections 5411 and 5412, General Code, in effect at the time of the assessments in question, were in the following language:

Section 5411. ''The cashier of each incorporated bank, and the cashier, manager or owner of each unincorporated bank, shall return to the auditor of the county in which such bank is located, between the first and second Mondays of May, annually, a report in duplicate under oath, exhibiting in detail, and under appropriate heads, the resources and liabilities of such bank at the close of business on the Wednesday next preceding the said second Monday, with a full statement of the names and residences of the stockholders therein, the number of shares held by each and the par value of each share, and of the amount of capital employed by unincorporated banks, not divided into shares, and the name, residence and proportional interest of each owner of such bank.''

Section 5412. ''Upon receiving such report the county auditor shall fix the total value of the shares of such banks, and the value of the property representing the capital employed by unincorporated banks, the capital stock of which is not divided into shares, each, according to their true value in money, and de-

duct from the aggregate sum so found, of each, the value of the real estate included in the statement of resources as it stands on the duplicate. Thereupon he shall make and transmit to the annual state board of equalization for banks a copy of the report so made by the cashier, manager or owner with the valuation of such shares or property representing capital employed as' so fixed by the auditor.''

In construing these sections, it is necessary to take into consideration Sections 5672 and 5673, General Code, in force at the times mentioned, and these sections are in the following language:

Section 5672. ''Taxes assessed on shares of stock, or the value thereof, of a bank or banking association, shall be a lien on such shares from the first Monday of May in each year until they are paid.

''It shall be the duty of every bank or banking association to collect the taxes due upon its shares of stock from the several owners of such shares, and to pay the same to the treasurer of the county, in which such bank or banking association is located, as other taxes are paid, and any bank or banking association failing to pay the said taxes as herein provided, shall be liable by way of penalty for the gross amount of the taxes due from all the owners of the shares of stock, and for an additional amount of one hundred dollars for every day of delay in the payment of said taxes.''

Section 5673. ''Such bank or banking association paying to the treasurer of the county in which it is located, the taxes assessed upon its shares, in the hands of its shareholders respectively, as provided in the next preceding section, may deduct the amount thereof from dividends that are due or thereafter become due on such shares, and shall have a lien upon the shares of stock and on all funds in its possession belonging to such shareholders, or which may at any time come into its possession, for reimbursement of

the taxes so paid on account of the several shareholders, with legal interest; and such lien may be enforced in any appropriate manner.''

It will be noticed that the obligation imposed by Section 5672 upon the bank is absolute and there is no duty imposed upon the owners of shares as such in the payment to the county of the taxes assessed. In the instant case the taxes were assessed actually against the shares, or, rather, the value thereof, and not against the capital stock or resources generally of the bank.

In the returns made there was clearly shown an excess of resources over liability. Were this not shown, no tax could, or would, have accrued.

Section 5412, General Code, clearly indicates that the value shall be fixed of the total of the shares, and that the deduction shall be from the aggregate so found. The section is silent as to any requirements about the manner in which the value so fixed shall be entered on the duplicate. In other words, there is no requirement that the taxes shall be entered in the names of the individuals whose shares are taxed. Taxation statutes generally would seem to bear no construction other than that property is to be assessed in the name of the person required to list it for taxation. There is no claim of double taxation, because the tax assessed was the only one that could be legally assessed, to wit, upon the shares.

As stated by the Supreme Court in the case of *Treasurer of Athens County* v. *Dale, Recr.*, 60 Ohio St., 180, 186, 53 N. E., 958: ''The right of the state to the receipt of its taxes is paramount to that of all others.'' While of course it must be conceded that if the tax is illegal and void it cannot be enforced, yet, unless it does clearly appear to be so, the county is entitled to preference for its taxes over the claims of the general creditors of the bank, and the record shows that the Superintendent of Banks has in his hands

far more than enough to pay these taxes. The record shows that dividends of 75 per cent have been paid, and that an amount is in his hands sufficient to pay an additional six or seven per cent in dividends.

Attention is directed to the case of *Heuck, Aud.,* v. *Cincinnati Model Homes Co.,* 130 Ohio St., 378, 199 N. E., 698, which seems to us decidedly applicable to the instant case, and the first paragraph of the syllabus of this *Heuck case* is as follows:

"1. Statutory provisions which do not relate to the creation of tax obligations, but merely to the instrumentalities by which tax valuations may be determined, clerical errors rectified or omissions supplied, or to the enforcement of tax obligations, are remedial in character and should be liberally construed."

We find no Ohio cases, and none have been called to our attention, determining our exact question since the adoption of the statute in force at the time in question. However, courts of other states have passed upon similar situations. The United States Supreme Court has many times been called upon to construe state statutes similar in character to the ones here involved. Counsel on both sides in the instant case concede that the federal rule is applicable, because the method of taxation is and must be the same when directed toward state banks as when directed toward national banks.

Attention is directed to the case of *Western Investment Banking Co.* v. *Murray, Treas.,* 6 Ariz., 215, 56 P., 728, the fourth paragraph of the syllabus of which is as follows:

"Laws Ariz. 1897, Act No. 51, Sections 4, 6, Construed—Section 4, *supra,* provides that the shares of national bank stock shall be entered and taxed in the names of shareholders; Section 6, *supra,* provides that it is the duty of the officer in charge of any banking association to file a sworn statement showing the number and amount of shares of such corporation, the

names and residences of the shareholders, and the number and amount of shares owned by each. It is the intent of the act, *supra,* that the shares of all banking associations, as well as national banks, should be listed and assessed in the names of the individual holders thereof, and, under the said statute making it the duty of the officers of the bank to pay the taxes due on such shares and giving the bank a lien to protect it in so doing, while properly shares of bank stock should be listed and assessed in the names of the holders, an assessment in the name of the bank is a mere irregularity, and one which will not warrant the equitable interference of the court."

It was held in the case of *Commrs. of Washington County* v. *State, ex rel. Fairford Lumber Co.,* 172 Ala., 242, 55 So., 623, in the second paragraph of the syllabus, that "the provision that the shares of capital stock shall be assessed to the person in whose name they stand, is merely directory, being for the information of the assessor, and not of the substance of the assessment, and that the assessment may be made against the corporation."

To a similar effect is the case of *Small, Recr.,* v. *City of Lawrenceburgh,* 128 Ind., 231, 27 N. E., 500, the syllabus of which is:

"Where bank stock is assessed and a valuation put upon it by the proper officer, and an entry made of the assessment upon the tax duplicate, the fact that the assessment was made in the name of the bank, instead of the individual stockholders, will not invalidate the lien, or relieve the respective stockholders from the payment of the tax for which it is liable. * * *"

One of the leading federal cases is that of *First National Bank of Aberdeen* v. *Chehalis County,* 166 U. S., 440, 41 L. Ed., 1069, 17 S. Ct., 629. Attention is directed to that case and to the authorities therein cited and to the fact that it seems to have been followed generally.

In the case of *Rainier National Park Co.* v. *Martin*, 18 F. Supp., 481, the ninth paragraph of the syllabus is as follows:

"Imposition of duty to collect tax on a person and thus constitute such person an agent of the state is a reasonable means for collection of tax."

It seems to us that, in view of what was actually done, the manner of listing these shares for taxes becomes and is immaterial. There was no error in the assessment of amount, nor was the wrong property assessed. It was simply a listing against the bank rather than against the shareholders, of a property tax, against the bank which was required by statute to pay the same. Reason and authority seem to us to sustain the legality and the validity of these taxes, and we see no reason why the county authorities should be deprived of their paramount right thereto.

While the Superintendent of Banks appears as a party defendant, he, nevertheless, files a pleading in which he admits the facts in plaintiff's petition and joins in her prayer for relief. The contest is essentially one between the Superintendent of Banks and the county authorities. The plaintiff's property is not primarily liable for the taxes. The transcript of the evidence taken in the Court of Common Pleas shows that the deputy superintendent of banks in charge of liquidation of The Dollar Savings Bank Company testified that, if the tax was to be paid, it was to be paid from the superintendent's funds, and that he had discussed this matter with the chief attorney in the superintendent's office.

In the amended answer and cross-petition filed in this court the defendants, county officers, asked that the Superintendent of Banks be required to pay these taxes out of funds in his hands, and it seems to us that such is the order that should be made. This is a court of equity and empowered to grant equitable relief under such circumstances. It is true that in the assess-

ment of taxes equity must follow the law, but in such a situation as is now present equitable principles may and should control.

It is, therefore, the order of this court that the taxes now a lien against the real estate of the plaintiff be paid by the defendant, the Superintendent of Banks of the state of Ohio, out of the funds now in his hands belonging to The Dollar Savings Bank Company, and that the costs of this proceeding are also taxed against him, to be paid out of such funds. Upon such payments, of course, the plaintiff is entitled to have the lien against her real estate cancelled of record.

*Decree accordingly.*

SHERICK and LEMERT, JJ., concur.

MONTGOMERY, P. J., SHERICK and LEMERT, JJ., of the Fifth Appellate District, sitting by designation in the Seventh Appellate District.